No. 24-60256 & 24-60227

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

EAST FORK ENTERPRISES, INC., *et al.*,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*

*Respondents*.

On Petitions for Review of a Final Rule
of the Environmental Protection Agency

## MOTION TO INTERVENE IN SUPPORT OF RESPONDENTS

Laura Ford Gooding
AMERICAN CHEMISTRY COUNCIL
700 2nd Street, NE
Washington, DC 20002

*Counsel for the American Chemistry Council*

David Y. Chung
Amanda Shafer Berman
Warren Lehrenbaum
CROWELL & MORING LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
(202) 624-2587
dchung@crowell.com

*Counsel for American Chemistry Council*

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

EAST FORK ENTERPRISES, INC., *et al.*,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*

*Respondents*.

---

On Petitions for Review of a Final Rule
of the Environmental Protection Agency

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    Proposed Intervenor-Respondent **American Chemistry Council** has no parent corporations and no publicly held corporation owns more than 10% or more of its respective stock.

2.    The following law firms and counsel have participated in these consolidated cases:

**Petitioners:** East Fork Enterprises, Inc.; Epic Paint Company; Sierra Club

**Counsel for Petitioners East Fork Enterprises, Inc. and Epic Paint Company:** Keith Bradley, Caffey Norman, and Allan Kacenjar, Squire Patton Boggs (US) LLP

**Counsel for Petitioner Sierra Club:** Jonathan Kalmuss-Katz and Lakendra Barajas, Earthjustice

**Respondents:** U.S. Environmental Protection Agency, Michael Regan, in his capacity as Administrator, U.S. Environmental Protection Agency

**Counsel for Respondents:** Merrick Garland, Attorney General; Todd Kim, Assistant Attorney General; Laura J. Brown, Senior Attorney, U.S. Department of Justice

**Proposed Intervenor AFL-CIO:** American Federation of Labor-Congress of Industrial Organizations (AFL-CIO)

**Counsel for AFL-CIO:** Matthew Ginsburg, General Counsel, AFL-CIO. Randy S. Rabinowitz; Victoria L. Bor, Occupational Safety and Health Law Project, LLC

*/s/ David Y. Chung*
David Y. Chung

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Fifth Circuit Rules 15.5 and 27, American Chemistry Council ("ACC") respectfully moves for leave to intervene in these consolidated cases and all other petitions for review of the same rule that are consolidated with these cases.

ACC moves to intervene in support of Respondents, the United States Environmental Protection Agency and EPA Administrator Michael Regan (collectively "EPA") in opposition to the petition for review in *Sierra Club v. EPA* (9th Cir. No. 24-3350). The undersigned counsel has sought the position of the parties in that case regarding this motion for leave to intervene. Neither Petitioner Sierra Club nor Respondents take a position on ACC's proposed intervention, but they reserve the right to respond after reviewing this motion. Petitioners in cases 24-60227 and 24-60256 (East Fork Industries and Epic Paint Company) do not oppose this motion

These consolidated cases are petitions for review of a final EPA rule entitled *Methylene Chloride; Regulation Under the Toxic Substances Control Act (TSCA)*, 89 Fed. Reg. 39,254 (May 8, 2024) ("Final Rule"). TSCA, 15 U.S.C. §§ 2601–2697, is the primary federal statute that regulates the manufacturing, processing, distribution, and use of chemical substances and mixtures in the United States.

ACC is a trade association whose member companies are directly regulated and affected by the Final Rule. Specifically, ACC member companies manufacture

methylene chloride and/or use methylene chloride in a wide variety of manufacturing processes to make other chemicals, polymers, and products. ACC's members thus have a substantial interest in this rulemaking, which is why ACC participated in the notice-and-comment process.

ACC satisfies each requirement to intervene: (1) its request is timely, as ACC seeks to intervene shortly after the deadline for petitions for review and before a briefing schedule has been set; (2) ACC has a material interest in Sierra Club's Petition for Review, which seeks to require EPA to impose even more stringent standards or bar further uses of methylene chloride, because its members are regulated and affected by the Final Rule; (3) disposition of that Petition may impair ACC's interests, as the consequences of any relief Sierra Club might obtain would be borne directly by its members; and (4) EPA cannot adequately represent ACC, whose members have direct commercial interests in the Final Rule.

This Court and other circuits have previously permitted ACC to intervene in several similar cases addressing EPA rules issued under TSCA that directly regulate ACC members. *E.g.*, *Texas Chemistry Council, et al. v. EPA*, Doc. #66-1 (5th Cir. 2024 filed June 21, 2024) (order granting motions to intervene); *Env't Def. Fund v. EPA*, No. 23-1166, Doc. #2017812 (D.C. Cir. filed Sept. 19, 2023) (order granting ACC's motion to intervene as a respondent in litigation challenging EPA's final rule governing submission of confidential business information under

TSCA); *Safer Chems., Healthy Fams. v. EPA*, 943 F.3d 397, 408–09 n.6 (9th Cir. 2019) (listing intervenor-respondents, including ACC); *Env't Def. Fund v. EPA*, 922 F.3d 446, 452 (D.C. Cir. 2019) (noting that a group of chemistry-industry associations intervened in support of EPA).

For these reasons, the Court should grant ACC's motion to intervene.

## BACKGROUND

ACC represents companies engaged in the business of chemistry, including by participating on behalf of its members in administrative proceedings before EPA and in litigation arising from those proceedings that affects member company interests. The business of chemistry is a $639 billion enterprise and an innovative, economic growth engine that is helping to solve the biggest challenges facing the nation and the world.[1]

ACC's members use and produce chemicals subject to regulation under TSCA and its implementing regulations, including the Final Rule that is the subject of this litigation. For instance, ACC represents methylene chloride manufacturers, as well as companies that use methylene chloride in a wide variety of manufacturing processes to make other chemicals, polymers, and products, including uses as a reactant, a catalyst, in processing or as a processing aid, and as

---

[1] *See* ACC, "About ACC," https://www.americanchemistry.com/about-acc.

a heat transfer fluid (HTF) in a system designed to minimize fluid loss. *See* Comments of the American Chemistry Council on Methylene Chloride – Regulation Under the Toxic Substances Control Act, at 1, Docket ID No. EPA-HQ-OPPT-2020-0465-0281 (July 3, 2023) ("ACC Comments").[2]

TSCA authorizes EPA to address unreasonable risks to public health or the environment from chemical substances available in the marketplace. EPA first conducts a risk evaluation under TSCA § 6(b). 15 U.S.C. § 2605(b). If EPA determines through such a risk evaluation that "the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture, or that any combination of such activities, presents an unreasonable risk of injury to health or the environment," EPA must promulgate a rule that applies one or more of the risk management measures identified in TSCA § 6(a) to the extent necessary so that the chemical substance no longer presents such risk. *See id.* § 2605(a). Those risk management measures include, among other things, "prohibiting or otherwise restricting the manufacturing, processing, or distribution in commerce of [a] substance or mixture" or "limiting the amount of such substance or mixture which may be manufactured, processed, or distributed in commerce;" "prohibiting or otherwise restricting the manufacture, processing, or distribution in commerce

---

[2] *At* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0281.

of [a] substance or mixture" for a particular use or a particular use in excess of a specified concentration; and requiring that substances or mixtures be marked with "clear and adequate minimum warnings and instructions" regarding use, distribution in commerce, or disposal. *Id.*

EPA conducted a risk evaluation under TSCA § 6(b)(4)(A) for methylene chloride. 89 Fed. Reg. at 39257 (citing June 2020 Risk Evaluation). In November 2022, EPA revised its original risk determination and determined that methylene chloride presents an unreasonable risk of injury to health "based on the whole-chemical substance…." *See id.* On May 3, 2023, EPA issued a proposed rule to address the unreasonable risk it identified in the November 2022 revised risk determination. *See* 88 Fed. Reg. 28284 (May 3, 2023).

ACC, its members, and other members of the chemical industry commented extensively on EPA's proposal. *See, e.g.*, ACC Comments; Comments of the North American Members of the ACC Polycarbonate/BPA Global Alliance (July 3, 2023);[3] Comments of the ACC Chlorine Panel (July 3, 2023);[4] Comments submitted by ACC members Celanese Corp. (June 30, 2023),[5] The Chemours

---

[3] *At* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0378.

[4] *At* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0268.

[5] *At* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0217.

Company (July 3, 2023),[6] Covestro LLC (June 29, 2023),[7] Dow (July 3, 2023),[8] DuPont de Nemours, Inc. (June 30, 2023),[9] and SABIC Innovative Plastics US LLC (July 3, 2023).[10]

These comments address various aspects of EPA's proposed rule. For instance, the ACC Chlorine Panel highlighted numerous errors in EPA's derivation of occupational exposure limits for methylene chloride. *See* ACC Chlorine Panel Comments at 2-8. ACC also expressed some concerns about the legal basis for the proposal. *See* ACC Comments at 8-10.

EPA issued the Final Rule on May 8, 2024. 89 Fed. Reg. 39254. The Final Rule prohibits the manufacture (including import), processing, and distribution of methylene chloride for all consumer uses and for most industrial and commercial uses. *See id.* at 39255. The Final Rule allows certain industrial and commercial uses to continue subject to workplace protections through a WCPP. *See id.* The WCPP includes inhalation exposure concentration limits and related workplace exposure monitoring and exposure controls. *See id.* The Final Rule also includes

---

[6] *At* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0242.

[7] *At* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0377.

[8] *At* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0245.

[9] *At* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0224.

[10] *Available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0367.

recordkeeping and downstream notification requirements for manufacturers and importers, processors, and distributors, and it establishes a *de minimis* threshold of 0.1 percent to account for impurities and the unintended presence of methylene chloride. *See id.*

Petitioner Sierra Club likely will challenge at least some aspects of the Final Rule that ACC supports. For example, Sierra Club's comments on the proposed rule argued that EPA should phase out all uses of methylene chloride that are not authorized under TSCA § 6(g). *See* Coalition Comments filed by Earthjustice at 13-14, Docket ID No. EPA-HQ-OPPT-2020-0465-0262 (July 3, 2023).[11] Sierra Club also supported EPA's initial proposal to not include a *de minimis* threshold. *See id.* at 17. While ACC believes that certain other provisions of the Final Rule are unlawful and thus filed its own petition for review of the Final Rule,[12] ACC also has a vital interest in intervening in intervening in the case filed by Petitioner Sierra Club to demonstrate that its likely arguments—that EPA should not allow certain continued industrial and commercial uses under a WCPP and should not include a *de minimis* threshold—are without merit.

---

[11] *Available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0262.

[12] *American Chemistry Council v. EPA*, No. 24-1256 (D.C. Cir. filed July 19, 2024). ACC's petition is pending transfer and consolidation under 28 U.S.C. § 2112(a).

# **ARGUMENT**

ACC has a direct and substantial interest in this litigation to protect its member companies and their interests. Its members' interests would be impaired by a ruling in favor of Petitioner Sierra Club, which would impact their ability to continue certain industrial and commercial uses of methylene chloride under a WCPP. ACC's interests in this case are not adequately protected by the existing parties and may be harmed by a favorable ruling for Sierra Club. The Court should grant ACC's motion for leave to intervene as respondent in these consolidated cases because it meets the standard for intervention in petition for review proceedings in this Court. At the very least, ACC should be granted permissive intervention to provide its members' perspective as regulated entities.

## I.     **ACC Satisfies the Standards for Intervention as of Right.**

When ruling on a motion to intervene in the petition for review context, this Court looks to the principles underlying intervention in Rule 24 of the Federal Rules of Civil Procedure. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994). A party may intervene as of right if it: (1) timely moves to intervene; (2) has a legally protected interest in the action; (3) shows that disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) demonstrates that existing parties may not adequately

represent its interests. *Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020); *see also* Fed. R. Civ. P. 24(a).[13]

"Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (quotation marks and citation omitted). Put simply, "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Id.* at 657 (quotation marks and citation omitted).

As explained more fully below, ACC satisfies all four requirements for intervention as of right.

### A.     ACC's Motion is Timely Under Local Rule 15.5 and Ordinary Intervention Principles.

Local Rule 15.5 states that "[a] motion to intervene under Fed. R. App. P. 15(d) should be filed promptly after the petition for review of the agency proceeding is filed, but not later than 14 days prior to the due date of the brief of the party supported by the intervenor." Although Federal Rule of Appellate Procedure 15(d) establishes a default 30-day deadline for the filing of motions to intervene in the petition for review context, courts have wide latitude to extend that

---

[13] With respect to Sierra Club's petition for review, ACC does not seek relief beyond that sought by EPA: namely, denial of the petition. Thus, it need not establish Article III standing. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. ----, 139 S. Ct. 1945, 1951 (2019); *Little Sisters of Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020).

deadline or permit the filing of an intervention motion after that 30-day period

expires. *See* Fed. R. App. P. 26(b).

Here, ACC's motion is timely under Local Rule 15.5, Sierra Club filed its

petition for review in the Ninth Circuit on May 28, 2024, and the Judicial Panel for

Multidistrict Litigation transferred that petition to this Court on June 18, 2024.

ACC seeks intervention at a very early stage, before EPA has filed the

administrative record in this case—and, importantly, before the Court has set a

schedule for any merits briefing. Accordingly, granting this motion will not disrupt

or delay proceedings in any way.

Even if this Court finds this motion to be untimely under Fed. R. App. P.

15(d) or Local Rule 15.5, it should nevertheless permit ACC to intervene,

consistent with this Court's "practice at times to grant motions for leave to

intervene out of time." *United Gas Pipe Line*, 824 F.2d 417, 436 n. 22 (5th Cir.

1987); *see also Int'l Union of Operating Engineers, Loc. 18 v. NLRB*, 837 F.3d

593, 595 (6th Cir. 2016) (Rule 15(d) "is a claims-processing rule that does not

affect our subject matter jurisdiction"); *Day v. Apoliona*, 505 F.3d 963, 965 (9th

Cir. 2007) (granting motion to intervene out of time in a two year-old proceeding

and emphasizing that "mere lapse of time, without more, is not necessarily a bar to

intervention"). As discussed above, these consolidated cases are still at a

preliminary stage, and allowing ACC to intervene would not unduly delay these proceedings.

**B.     ACC's Members Have an Interest Relating to the Subject of This Proceeding That May as a Practical Matter Be Impaired by the Outcome of This Case.**

A party seeking intervention need only claim a legally protectable interest that is "of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (citing *Texas*, 805 F.3d at 659) (discussing examples of legally protectable interests). This Court has interpreted the interest and impairment to require that a party show that it has a pecuniary or property interest that satisfies Rule 24(a)(2) requirements and, if it cannot intervene, there is a possibility its interest could be "impaired or impeded." *Id.* at 307. All that is required to satisfy the impairment prong is that the "potential to impair" ACC's interests. *Ross v. Marshall*, 426 F.3d 745, 761 (5th Cir. 2005).

Here, ACC's members have important interests that could be impaired were Sierra Club's petition to be granted. ACC's members manufacture methylene chloride and/or use methylene chloride in a wide variety of manufacturing processes to make other chemicals, polymers, and products. *See* ACC Comments at 1. The Final Rule directly affects ACC's members because it (1) prohibits the

manufacture (including import), processing, and distribution of methylene chloride for all consumer uses and for most industrial and commercial uses; and (2) subjects continuing industrial and commercial uses to a WCPP, including inhalation exposure concentration limits and related workplace exposure monitoring and exposure controls. Because of the direct impact of the Final Rule on ACC's members, those members have "legally protectable property interests" in the outcome of this action. *Sierra Club*, 18 F.3d at 1207.

If Sierra Club succeeds in challenging EPA's decisions to allow certain industrial and commercial uses under a WCPP, *see* 89 Fed. Reg. at 3955, and to include a *de minimis* threshold, *see id.*, that would deprive ACC's members the opportunity to continue to safely use methylene chloride in certain applications. Disposition of Sierra Club's challenge to the Final Rule thus has the potential to impair or impede ACC's interests.

For these reasons, ACC meets the interest and impairment requirements for intervention as of right.

## C. Existing Parties Do Not Adequately Represent ACC's Interests.

ACC readily meets the inadequate representation requirement. It need only show that "the representation of [its] interests 'may be' inadequate," not that it "will be, for certain, inadequate." *Texas*, 805 F.3d at 661 (internal quotation marks and citation omitted). Its burden to make such a showing is "minimal." *Sierra*

*Club*, 18 F.3d at 1207 ; *see also Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179, 195 (2022) (requirement "present[s] proposed intervenors with only a minimal challenge").

Here, ACC seeks to intervene in support of EPA in the petition for review filed by Sierra Club. Neither Sierra Club nor EPA can adequately represent ACC's interests. As demonstrated by Sierra Club's comments on the proposed Final Rule, its likely arguments in this suit diverge sharply from ACC's interests.[14] Nor are ACC's interests fully aligned with EPA's. Although this Court has recognized "presumptions of adequate representation" where the intervenor "has the same ultimate objective as a party" or a party is "a governmental body or officer charged by law with representing the interests of the intervenor," those presumptions are rebutted here because the difference between ACC's and the government's interests and duties "*may* lead to divergent results." *La Union del Pueblo Entero*, 29 F.4th at 308 (internal quotation marks and citations omitted).

Congress did not charge EPA in TSCA with representing the chemistry industry's interests. Rather, EPA must balance the chemistry industry's interests with the broader public interest. *See, e.g.*, *Sierra Club*, 18 F.3d at 1208 (concluding

---

[14] Petitioners East Fork Enterprises, Inc. and Epic Paint Company also cannot adequately represent ACC's interests. Because neither of those petitioners has moved to intervene as a respondent in these consolidated cases, they cannot be expected to defend any aspects of the Final Rule.

that the agency "represent[s] the broad public interest, not just the economic concerns of the timber industry" and based on "the minimal burden," concluding "that [its] representation of the intervenors' interest is inadequate"); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (per curiam) (concluding that because the Department of Agriculture must represent the broad public interest, "[f]or this reason alone," its interests and those of farmers seeking to intervene "will not necessarily coincide").[15]

More specifically, EPA's arguments in this case necessarily will focus more on the Agency's institutional interests and duties, whereas ACC's arguments will focus on the potentially harmful consequences that revisions to the Final Rule could have on its members' operations and commercial interests, including the continued use of methylene chloride in certain applications under appropriate workplace protections. Furthermore, in responding to Petitioner's likely challenges

---

[15] Other circuits take a similarly broad approach to granting intervention in support of federal defendants. *See, e.g.*, *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("[T]he government's prospective task of protecting not only the interest of the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation.") (internal quotation marks and citation omitted); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44–45 (1st Cir. 1992) ("[A] governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity.").

to those continued uses, EPA and ACC might present divergent arguments

concerning the precise contours of EPA's authority in TSCA § 6(d) or EPA's

interpretations of key terms within that section. Finally, EPA's and ACC's distinct

interests may cause them to disagree about the prospects of settling Sierra Club's

petition or how to proceed post judgment. *See Crossroads Grassroots Pol'y*

*Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("It is

apparent the Commission and Crossroads hold different interests, for they disagree

about . . . post-judgment strategy.").

    In short, there are any number of ways in which EPA and ACC's views may

diverge  as to how best to respond to Petitioner's challenges, making ACC's

participation non-duplicative and useful to the Court. *See La Union del Pueblo*

*Entero*, 29 F.4th at 309.

## II.    Alternatively, ACC Should Be Granted Permissive Intervention.

    ACC also meets the requirements for permissive intervention. A party

qualifies for permissive intervention when it shows that its claim or defense shares

a common question of law or fact with the main action. *Richardson*, 979 F.3d at

1105. In determining whether to permit such a party to intervene, a key

consideration is whether the proposed intervention would "unduly delay or

prejudice the adjudication of the . . . rights" of the original parties. Fed. R. Civ. P.

24(b). Indeed, permissive intervention does not require a showing of inadequacy of

representation nor a direct interest in the subject matter of the action. *See SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940). As discussed above, however, ACC can readily make such a showing and has such an interest here.

Permissive intervention is warranted here for several reasons. First, ACC's motion is timely because it is filed very early in this litigation, before the administrative record has been filed and a briefing schedule set, and thus will not cause undue delay or prejudice to the parties. Second, ACC's defense of aspects of the challenged EPA rule presents questions of law and fact in common with the underlying petition that would respond directly to Petitioner Sierra Club's claims. Third, ACC's unique perspective as the leading trade association representing companies engaged in the business of chemistry will aid this Court's understanding of the underlying legal and factual issues involved and assist in the efficient resolution of this case. For these reasons, and in the alternative, this Court should grant ACC's permissive intervention.

## CONCLUSION

For the foregoing reasons, ACC respectfully requests leave to intervene in these consolidated cases.

Dated: July 26, 2024

Respectfully submitted,

/s/ David Y. Chung

Laura Ford Gooding
AMERICAN CHEMISTRY COUNCIL
700 2nd Street, NE
Washington, DC 20002

*Counsel for the American Chemistry Council*

David Y. Chung
Amanda Shafer Berman
Warren Lehrenbaum
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
(202) 624-2587
dchung@crowell.com

*Counsel for American Chemistry Council*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies:

1.    The foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,570 words, excluding those parts exempted by Fed. R. App. P. 27(a)(2)(B). As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2.    This motion also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

*/s/ David Y. Chung*
David Y. Chung

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing through the CM/ECF system,

which will send a notice of filing to all registered CM/ECF users.


*/s/ David Y. Chung*
David Y. Chung

Dated:  July 26, 2024